Edelman v. Schultz Hang on, Ms. Roberts, just for a second. No, it's just that it's not fair to you to have noise behind you, so I won't... It's okay, it's just I generally let the courtroom clear a little bit so there's no clutter of noise behind you. Okay, Ms. Roberts. Good afternoon. Good afternoon. May it please the Court, Sally Roberts for the Appellant, Stephen Edelman who is here with me. In the words of master building code professional Mark Tevitz, In all my years, I have never heard of anyone being arrested and prosecuted for failing to obtain a permit for a roof repair. No one's safety was at risk, so what was the hurry to serve a stop work order and then have him arrested? The town has a procedure for a late filing fee, which Edelman paid but was still arrested. It is clear that the town and Schultz used the excuse of enforcing the building code to punish Mr. Edelman. Connecticut Supreme Court Justice Borden gets it. None of the appellate court issues are at all implicated by all of these arguments that you're making now. That 29263 is not a criminal statute at all. Nowhere in his brief does Schultz protest that Edelman is wrong. Instead, Schultz newly raises collateral estoppel, a spurious defense because 1. Collateral estoppel cannot derive from an appellate court that vacated the judgment of conviction precedent to dismissal on remand. 2. Schultz abandoned a collateral estoppel defense by not availing himself of a full and fair district court chance to use it. 3. The superior court wrongly assumed that the appellate court found probable cause. And 4. Schultz cannot root selective prosecution argument in a superior court decision itself already stopped by the district court. Manifest injustice would result by letting stand any superior court decision that not only failed to defer to an earlier district court decision, finding selective and class of one prosecution, but somehow reached an opposite conclusion using identical law. Non-prosecutable statutes 29254A and 29263 were used uniquely against Edelman over a few square feet of roof to enforce a building code deemed non-discretionary by both Judge Squitrito and Schultz. Edelman's exercise of constitutionally protected freedoms cannot validly differentiate him from other comparators. Judge Squitrito made no mistake in perceiving that it is objectively unreasonable and fundamentally unfair for many hundreds of people in Wyndham alone to do no less than Edelman but incur no consequence beyond paying a small late fee. Edelman has pled facts sufficient to support false arrest, malicious prosecution, due process deprivation, and deprivation of liberty claims. Edelman needed no more the stave-off threshold dismissal on the pleadings. Summary judgment drew facts and inferences in favor of Schultz rather than Edelman. Whether Edelman filed an application of sorts, qualifies as a repeat offender of unauthorized roofing, or materially differs from comparators relevant to a non-discretionary building code are all jury questions. Neither this nor any other court should ever have had cause to try Edelman. An administrative agency should have resolved this dispute nearly a generation ago. It would have understood that 29263 was just another legislative mandate to the Department of Public Safety for building code adoption. At most, Edelman would have paid a late fee and the parties would have gone their separate ways. Roberts, let me ask about the prior occasion, I guess in 1998, when there was a stop work order, which your client essentially ignored, tore up the summons. Is that not some basis for a reasonable person to have grounds for arrest? The 1998 stop work order, he stopped immediately. And he began researching and making phone calls and filed his appeal by the end of that afternoon on June 25th. He was working without a permit at that time, and he was essentially approached. You're talking about June 1998? Yes. Three days before that, on Monday, the assistant building official, Daniel Costello, had stopped by and spoke to Edelman and looked at the roof. It's only 5.7% of the roof. This is a 200-year-old unoccupied home. And the assistant building official had told Edelman that he didn't need a building permit. And Edelman had also, to avoid another confrontation with Schultz, he had specifically done his research. It is an open question as to whether you're repairing 5% of the roof on a single-family residence, which is not subject to the BOCA. It's not a commercial residence. It's an open question as to whether you need a building permit. And many of the building officials in the surrounding towns had said, you're entitled to do ordinary repair, maintenance, less than 25% of your roof, 100 square feet. So Edelman had done his research. Three days before, the assistant building official had said, you're all right. And so Edelman went ahead and was working on 5.7% of his roof of this 200-year-old house. And he immediately faxed his first appeal by 4 o'clock that afternoon. He spoke to Lau, the state building inspector, that following morning, which was Friday. By 8.30 a.m., he was at the town hall applying for the building permit. And on the building permit, there's a section for comments. And it said, per Lau, paying the late filing fee abates any enforcement action. So, and by Monday, the 26th, Schultz granted that building permit. What is absolutely outrageous about this case is that while the ink was still wet on that stop work order, Schultz was filling out an arrest warrant application. That is absolutely uncalled for. And when Edelman, when he approved the building order on Monday, he didn't then inform the prosecutor that there's no reason more to continue with the prosecution. First of all, there's no reason for the prosecution. The only thing that stop work order said was obtain required permit. He didn't even give him 24 hours. It's not the law that you can be arrested for hammering one nail. The code has a procedure out. You're given notice, you're told about the violation, you're given an opportunity to abate that violation. And everyone agrees, Lau, the building code experts, and even Schultz, once you abate that violation by paying that late filing fee, there's no grounds for prosecution. But for Schultz to have applied for an arrest warrant on a lie of continued work, the only way you can arrest someone is for continued work after you're given notice. And it was an absolute lie that there was continued work. And that was the basis for the arrest, which somehow morphed into a 29-263, which is not part of the building code, and that's not the ground for an arrest. So this case should never have even gotten into the courts. It should have remained in the agency, should have resolved this dispute nearly a generation ago. An agency would have understood that 29-263 is just another legislative mandate for what the building code should adopt. And most Edelman would have paid a late fee, and the parties would have gone their separate ways. Instead, the world of Edelman and his family has been turned topsy-turvy by premeditated Schultz subterfuge and lies. On their behalf, I respectfully implore this Court to make things right. Okay. Do you have your rebuttal time, Ms. Roberts? Yes, I've reserved my rebuttal. Mr. Jerram? Thank you, Your Honors. May it please the Court, my name is Russell Jerram, and I represent Defendant Donald Schultz in this appeal. Simply put, Mr. Schultz was the building official for the town of Wyndham starting in 1992 and continuing up to his retirement. For almost the entire duration of that time period, he's been subject to litigation in this case. As it pertains to the particular facts that are at issue, on June 25, 1998, Mr. Schultz observed Mr. Edelman working on a roof at his property, determined a building permit had not been issued, and subsequently issued a stop work order. The stop work order was served by a third-party defendant, Sheriff Page. The report from Mr. Page determined that upon service of the stop work order, Mr. Edelman had torn up the stop work order, threw it back at Mr. Page, and allegedly kicked his car. Upon report of this information to Mr. Schultz, Mr. Schultz sought the input of the local housing prosecutor, and upon his recommendation, submitted an arrest warrant affidavit. The prosecutor took that, reviewed it, had it submitted to a local judge for approval. Mr. Edelman was arrested on July 2, 1998, and following that was submitted for prosecution by the local housing prosecutor. The judge allowed the matter to go to a jury, issued a charge relating to the particular claims that Mr. Edelman was being tried upon, and the matter was appealed to the Connecticut Appellate Court, where the appellate court reversed on a procedural technicality, but nonetheless affirmed the validity of the charge that Mr. Edelman was tried upon. So on the basis of these facts, Your Honors, we submit that there is valid grounds to affirm the decisions of the district court by Judge Squatrito and Judge Meyer on both the motion for judgment on the pleadings and the motion for summary judgment. There are a variety of grounds to do so. I would submit, Your Honors, that the primary basis would be on qualified immunity, although neither Judge Squatrito or Judge Meyer reached that decision, given the fact that they had found alternative grounds, I think that is the simplest way to approach this case. Given the appellate court's determination that Mr. Edelman was properly tried on these claims, I believe that it is objectively reasonable for Mr. Schultz to have proceeded on that course of action. He was found guilty by the jury of the violation of the zoning ordinance, right? Mr. Edelman was found guilty of a failure to obtain a permit to construct or alter under the building code, and that was appealed, and due to the decision of Judge Foley to not poll the jury, it was reversed. But he was acquitted with regard to the allegations about the officer, right? He was acquitted on those claims, yes. Your opponent says that Schultz went ahead and made the criminal application after he had already issued a permit. Is that true? Was that part of the proof in front of the jury? Am I wrong about that? If I can just clarify, and I think this goes to Your Honors' question before as well, in this case, on June 25th, 1998, Mr. Schultz determines that a permit has not been issued for Mr. Edelman's property. With that knowledge, a stop work order is issued. Subsequently, the following day, Mr. Edelman makes an application for the permit, and it's approved the following Monday, the next business day. The charges for having performed work prior to obtaining a permit, or was he charged for violating a stop work order? The charges for that he was arrested on were both. However, the prosecutor at the time of trial elected to withdraw the claim of violation of a stop work order and only proceeded on the claim of failure to obtain a building permit. And by reviewing the base allegations in this complaint, that is undisputed. Mr. Edelman did not have a permit. Mr. Edelman was working without a permit. That was the claim that was tried to a jury and the claim of which he was ultimately convicted, albeit with a vacated conviction on appeal for the technicality. The probable cause determination that there's argument about the collateral estoppel effects on, that goes to the probable cause to arrest with regard to, not the violation of the stop work order, but the violation of the zoning ordinance itself. It goes to both, Your Honor, because... Ultimately, he's not convicted of the stop work order, so whether there was probable cause for that or not is irrelevant. That's correct. It's irrelevant as to whether or not there was probable cause for the continuing work in violation. The issue is, in this case, and has always been the issue, is Mr. Edelman's position as to how to apply the building code to his property. And I believe that the fact that the prosecutor elected to proceed with this course of action, that the judge elected to proceed with this course of action, and the appellate court's determination that that course of action was valid, goes to the position that Mr. Edelman's interpretation is incorrect. And so... Any assertion that Mr. Edelman, or that Schultz misrepresented the work that Edelman was doing at the time that the stop work order was issued? In terms of the amount of area that was involved with regard to the roof? No, Your Honor, and our position has been that that is and always has been a red herring. The disputes that they identify are hearsay statements from third-party building officials as to whether or not a building permit was required in here. The criminal trial testimony of Christopher Lau, the state building inspector at the time, provides that a building permit was required. That is his testimony before the trial court on this particular case. Mr. Jaramillo, a question. You mentioned earlier that there were, in your view, alternate grounds for this court to affirm, the lower courts, and you mentioned qualified immunity. Yes, Your Honor. And you mentioned, were there some other grounds? Certainly, Your Honor. I've raised in the brief the issue of abandonment, and I'll rest on the brief on that. There are underlying claims that basically relate to the plaintiff's belief that the state building code was inappropriately applied to him. That was not raised in the motion for judgment on the pleadings. That was my question. Were these issues raised in the lower courts? Is there a sufficient record for this court to examine those issues in the event we were to agree that the district court decision was improper? What was raised in the motion for judgment on the pleadings was that, from the position of the defendant, that there was probable cause supporting the arrest because he was tried on a claim for which Mr. Edelman sufficiently alleges in his own complaint that he worked in violation, or rather worked without a permit. Mr. Edelman's contentions in the appeal are that the overarching theory of the case that he can't be tried under 29-254A or 29-263 of the Connecticut general statute that wasn't raised in his opposition brief. It wasn't addressed by Judge Squattrito in the motion for judgment on the pleadings decision. So I would submit that those claims were not adequately briefed in the underlying issues. The issue about collateral estoppel that was raised by Attorney Roberts, whether or not this court examines it under collateral estoppel doctrine or simply analyzes the actual facts that Judge Boland relied on on two separate occasions in the claims that Mr. Edelman brought in state court against the state building inspector. The fact remains that Judge Boland has determined as a matter of law that probable cause existed for the prosecution of Mr. Edelman under the theories that the state advanced at the time, and as such, this court can determine that probable cause existed, and therefore there were no constitutional violations supporting claims of false arrests, malicious prosecution. Similarly, the court's analysis, Judge Boland's analysis of the stop work order, or of the due process claims and equal protection claims, I think can be either adopted based on the same rationale or on a collateral estoppel basis. Mr. Edelman has not advanced any basis for a sort of dual-track proceeding where he would be entitled to an administrative determination of whether or not the permit was needed prior to the court's determination or prior to submission of the claim to a jury on a criminal claim. And I would submit, Your Honors, as to the larger equal protection claims, I think that either under the pleading requirements, on a motion for judgment on the pleadings, on the evidence submitted to Judge Meyer on the motion for summary judgment, he has wholly failed to identify any similarly situated individual and has not overcome the legitimate governmental objective of securing compliance with somebody that has, on multiple occasions, failed to obtain a permit and then sought to counter the decision of the local building official. And I note, Your Honors, that my time is up. Unless you have any questions, I yield. Thank you very much. Thank you. Ms. Roberts, you have your rebuttal time. Your Honors, the only issue is that the code is non-discretionary. Edelman was tried and convicted, found guilty of 29-263, which is not a criminal statute and is not a part of the building code. Why didn't he raise that in the criminal proceeding? And why didn't he raise it below the first time you've raised it, when you've come here? Why start an argument at the level of appeal and not, A, when his liberty is in question and, B, when you're in front of a district court judge that could decide the matter? Well, I think . . . It seems a little late to be raising it now, isn't it? I think in the criminal court, the only issue . . . the only thing that you can be arrested for is for continued work without . . . Right. If it's not a crime, you simply move to dismiss. That didn't happen. No. I think that the trial counsel thought that the prosecutor then would have substituted a 118 building code offense. Then everybody did know that there was a statute from which his liberty could be taken. Why would we then substitute a technicality when, indeed, everybody was operating on a correct assumption? It's a little late to ask a district court to accept a technicality when, indeed, you yourself just told us that there is, indeed, a criminal statute available to him. He could have raised that with the district court in the trial court. The trial court then may have amended the complaint, but you can't do it after the fact and then claim somehow that's the basis for a suit in federal court for a violation of someone's civil rights. Doesn't this seem a touch late to you? Well, I think it depends on some of the testimony that came out at the criminal trial. Seriously. It's an issue of law. It's not an issue of fact at all. It's a simple issue of law. You know, back in the days when I was practicing law, I'd walk into court, and if the government has not incited a statute that's not a crime, I move into dismiss. My client's liberty is at stake. If Mr. Edelman's liberty was at stake, then the motion to rectify that situation should have been made there and not here at this late date. There, indeed, is a statute that allows Connecticut to take someone's liberty when they violate zoning ordinances. But it's not a strict liability statute. Okay. You can only be arrested if you're given notice of a stop work order and you continue working without the stop work order. And they wouldn't have known that the testimony at trial was that they saw him ñ they were conflicting testimony. Schultz said that he thought Edelman continued because of Page, because of information from Page. Page said, I didn't see him up, I didn't see him working, I have no idea what he was doing up there. So there were these lies at trial that undercut the rest warrant application. Lies at trial on a conviction, the conviction of which has not been overturned, with regard to the violation of the zoning ordinance of not working without a permit, right? Well, it was remanded and he was ñ Later a no-load, right? It was nollied. It was ñ Okay. Both of them were nollied. There was a nollie of 29254A and there was a nollie of 29263. Fair enough. But Judge ñ Go ahead, I'll let you finish your thought. Judge Quattrito had plenty to say about qualified immunity and he said that no reasonable person ñ he said that the right was clearly established not only in the legal sense but also in the common sense, that no reasonable person could believe it was objectively reasonable to criminally prosecute one man for repairing the shingles of his home without a permit while simply accepting surcharge payments from his neighbors for the same building code. This was on Quattrito's ñ This is on Quattrito's ñ File of motion for summary judgment with regard to the ñ which was later than ñ then there was a later decision saying that the allegations weren't sufficient, right? This was on page 54 of Judge Quattrito's ñ I'm familiar. Really. Anything else? No. It's just basically that the building code is nondiscretionary and Judge Meyer's decision was ñ didn't address the discretionary part of it. Fair enough. We've read your brief. We have your submission. The matter is deemed submitted. You'll hear from us in due course. That completes the work of the court for the day. The clerk will adjourn the court, please. Court is adjourned.